# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black Apple iPhone ("Target Device 2")<br>Seizure No. 2023250600017302-0001 | )<br>)<br>) Case No. **23mj1671**<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A-2, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Secs 952, 960, 963 | Importation of a Controlled Substance & Conspiracy |

The application is based on these facts:
See attached Affidavit of Special Agent Matthew Smith.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Matthew T. Smith*
Applicant's signature

Special Agent Matthew Smith, HSI
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____
*(specify reliable electronic means)*.

Date: 05/10/2023

Judge's signature

City and state: San Diego, CA

Hon. Bernard G. Skomal
Printed name and title

# AFFIDAVIT

I, Special Agent Matthew Smith, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device(s), (Collectively, the "Target Devices"):

    Red Samsung ("**Target Device 1**")

    Seizure No. 2023250600017301-0003

    Black Apple iPhone ("**Target Device 2**")

    Seizure No. 2023250600017302-0001

as further described in Attachments A-1 and A-2, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960 and 963, as further described in Attachment B. The requested warrant relates to the investigation and prosecution of **Dulce Karina SOTO-Dominguez** ("**SOTO**"), and **Sonia DOMINGUEZ** ("**DOMINGUEZ**"), for importing approximately 364 grams (0.80 pounds) of fentanyl from Mexico into the United States. Target Devices are currently in the custody of Homeland Security Investigations and located at 880 Front Street, San Diego, CA 92101.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Devices, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since September of 2018. I am currently assigned to the HSI Office of the Special Agent in Charge, in San Diego, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia. Part of my training included a three-day, basic, digital data examination course. This course included the use of a Cellebrite Physical Analyzer to extract data from cell phones and other electronic devices.

4.      During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5.      I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual(s) responsible for importing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within the United States.

6.      Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats

and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

    a.    tending to indicate efforts to import controlled substances from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in importation of fentanyl, or some other federally controlled substance, from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

7. On December 30, 2022, at approximately 1:00 PM, **SOTO**, her two minor children, and **DOMINGUEZ**, who are all United States citizens, applied for entry into the United States from Mexico through the San Ysidro Port-of-Entry, in vehicle lane #8. **SOTO** was the driver and registered owner of a 2014 GMC Terrain ("the vehicle") bearing California license plates.

8. Customs and Border Protection (CBP) Officer Del Rio, encountered **SOTO**,

her minor children, and **SOTO's** mother (**DOMINGUEZ**), in the Primary Inspection area; **SOTO** provided two negative declarations. **SOTO** further stated that she was crossing the border for the purpose of traveling to San Diego, California. The vehicle was referred to secondary inspection.

9. CBP Officer Gonzales, who was assigned to the Anti-Terrorism and Contraband Enforcement Team (ATCET), was performing a secondary inspection of the vehicle and discovered a puzzle box inside the center console. Further inspection of the puzzle box resulted in the discovery of three (3) black packages, containing what appeared to be blue, counterfeit, fentanyl-laced Oxycodone M-30 pills. The pills contained within the packages field tested positive for the chemical properties of fentanyl and had a total approximate weight of 364 grams (0.80 pounds).

10. On December 30, 2022, at approximately 3:25 PM, **SOTO** and **DOMINGUEZ** were placed under arrest.

11. During a post-Miranda interview, **DOMINGUEZ** acknowledged her role in the narcotics smuggling event and further admitted to smuggling controlled substances into the United States on approximately eight prior occasions. **DOMINGUEZ** claimed she was working for an individual know to her as "Armando" and was being paid $400.00 USD for each successful smuggling event. **DOMINGUEZ** claimed that **SOTO** was making approximately $1,500 USD per successful smuggling event; **SOTO** was earning more because they were using **SOTO's** vehicle and incurred more of the risk. **DOMINGUEZ** admitted that she would typically go directly to a local business in San Ysidro, California, and mail the narcotics to various addresses which were provided by "Armando." **DOMINGUEZ** admitted that the last time she was involved in smuggling / mailing narcotics was approximately one month prior to her arrest. **DOMINGUEZ** identified **Target Device 1** as being hers and provided consent to search the device. **DOMINGUEZ** identified a contact labeled "Estefania" as belonging to "Armando" with the associated

number (619) 638-5968.[1] During a search of **Target Device 1**, investigators identified a Facebook Messenger conversation with a contact labeled "Armando Scarlett Zaragoza." The contact had an associated profile picture of what appeared to be a young Hispanic male and female. **DOMINGUEZ** admitted that these were communications with "Armando" who is the organizer of the drug smuggling events which they participated in. She further explained that "Scarlett" is the name of "Armando's" wife and identified the two persons in the profile picture as "Armando and "Scarlett."[2]

12. During a post-Miranda interview, **SOTO** denied any knowledge that the narcotics were inside the vehicle. **SOTO** identified **Target Device 2** as hers and provided consent to search the device. During a search of **Target Device 2**, SA Smith identified a Facebook Messenger contact labeled "Barbas." The associated profile picture depicted a Hispanic female which appeared to be the same person which **DOMINGUEZ** identified as "Scarlett."

13. During a follow up interview with **DOMINGUEZ**, she identified the profile picture of "Barbas" in **SOTO's** phone as being "Scarlett."

14. The Target Devices have remained in the care, custody, and control of HSI since being seized on or about December 30, 2022. The Target Devices have been in airplane mode and powered off since on or about December 30, 2022, to prevent the receipt of radio signals which would alter the contents of the devices.

15. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Devices. In light of the above facts and

---

[1] On April 9, 2023, SA Smith served T-Mobile with a subpoena for records associated to (619) 638-5968. The results revealed that the registered owner of the account listed the name, "Armando Armando."

[2] During a routine secondary search of the vehicle, CBP Officers located a third cellular device. The device appeared to be in a non-operable condition at the time. DOMINGUEZ claimed the device was given to the children as a toy and did not work.

my experience and training, there is probable cause to believe that Defendant was using the Target Devices to communicate with others to further the importation of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Devices for data beginning on October 30, 2022, up to and including December 30, 2022.

## METHODOLOGY

16.  It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic

data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

17. Following the issuance of this warrant, I will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

18. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

19. SA Smith performed forensic extractions of digital data from the Target Devices on December 31, 2022, based on the consent of both **SOTO** and **DOMINGUEZ**. The forensic download of the Target Devices did not capture the social media content (i.e., Facebook Messenger) which SA Smith observed while physically looking through the devices on the date of **SOTO**'s and **DOMINGUEZ**'s arrests.

## CONCLUSION

20. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Devices will yield evidence of Defendant's violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachment A-1 and A-2, and seize the items listed in Attachment B, using the above-described methodology.

//
//

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Special Agent Matthew Smith
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 10th day of May, 2023.

_____
Honorable Bernard G. Skomal
United States Magistrate Judge

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

Black Apple iPhone ("**Target Device 2**")
Seizure No. 2023250600017302-0001

The Target Device is currently in the possession of Homeland Security Investigations, located at 880 Front Street, San Diego, CA 92101.



## **ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachments A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of October 30, 2022, up to and including December 30, 2022:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of fentanyl, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.